JANUARY TERM, 1848. 27

David C. Wilson, Administrator of James Lunn, &c., *vs.* Richard Hayward.

DAVID C. WILSON, ADMINISTRATOR OF JAMES LUNN *vs.* RICHARD HAY-
WARD.

The Territorial act entitled, "An act to regulate the foreclosure of mortgages by the Courts of common law of this Territory and for other purposes," approved Dec. 11, 1824, may afford a remedy in favor of the mortgagee, or his assignee, against the *mortgagor*, but not against the *assignee* of the mortgagor, because the statute gives judgment for the debt which cannot be rendered against the assignee of the mortgagor.

The party claiming a judgment of foreclosure under the statute should be the owner of all the demands secured by the mortgage, otherwise he is not entitled to judgment.

Where several notes in the hands of different parties were secured by mortgage, and the holders of a part of the notes had by petition under the statute obtained judgment of foreclosure against the administrator of the mortgagor, whereby he and all persons claiming through his intestate were barred of all right and equity of redemption in the mortgaged premises, and a sale of the premises had been made under the judgment---the holder of any of the remaining notes, secured by the same mortgage, cannot afterwards have a foreclosure under the statute of the same mortgage against the same defendant.

Writ of error to Leon Circuit Court.

In Nov. 1845, Richard Hayward filed a petition against David C. Wilson administrator of James Lunn deceased, under the statute regulating the foreclosure of mortgages approved December 11, 1824, setting forth in substance---that on the 4th June, 1840, Lunn executed a mortgage to Robert K. West, of a certain lot in Tallahassee, to secure the payment of $5000 due from Lunn to West on five several promissory notes, bearing date with the mortgage, of $1000 each, payable respectively in one, two, three, four, and five years from the date. That on the 6th May, 1841, West endorsed and delivered to Hayward the note last due and also assigned and transferred the mortgage by written assignment endorsed thereon. That Lunn died intestate and on the 15th October, 1841, administration of his estate was committed to Wilson the plaintiff in error. The petition concludes with a prayer for judgment for the amount of the mortgage debt due to Hayward, and for a foreclosure of the mortgage.

To this petition Wilson filed several objections by way of plea

under the statute alleging that the mortgage had already been foreclosed under the same statute, by judgment and decree against him as the administrator of Lunn rendered in the Leon Circuit Court, at the fall term 1843, in favor of Wilson & Herr merchants of Baltimore, who had become the holders of three of the notes secured by the mortgage, being the three first due. That a sale without objection, under the judgment and decree had been made by the marshal according to law, that Hayward had notice of the sale, and that said Wilson & Herr became the purchasers of the mortgaged premises. Upon these facts, Wilson insisted that another judgment of foreclosure, ought not to be given against him, and also that the claims of Wilson & Herr, to satisfy which the premises had been sold, had priority over the claim of Hayward.

To these objections the petitioner demurred, and the Court (Douglas, Chief Justice presiding,) sustained the demurrer, and gave judgment for the petitioner on the 12th November, 1847, for the amount of the note assigned to him with interest, to be levied of the mortgaged premises, and if that was insufficient then to be levied of assets of James Lunn, *quando acciderint,* &c. ; and also entered decree of foreclosure of the equity of redemption in usual form.

To reverse this judgment and decree under the statute, Wilson the administrator of Lunn prosecutes his writ of error in this Court.

*Douglas & Hogue,* for Plaintiff in Error.

*Thompson,* for Defendant in Error.

BALTZELL, Justice :

The case before us arises upon an application of the holder of one of five notes secured by mortgage, to obtain a foreclosure and sale of the mortgaged property. The defendant insists that another party, holder of three notes secured by the same mortgage due before that of the petitioner, and to whom the mortgage was assigned, obtained at a prior term of the Court judgment of foreclosure in legal form against the defendant, the representative of the mortgagor. That a sale was had under the judgment, and Wilson and Herr the plaintiffs in the judgment and execution became the purchasers. It appears by the mortgage that there is also a fifth note outstanding, and embraced in the same mortgage. The plaintiff objects to the defence as insuffi-

David C. Wilson, Administrator of James Lunn, &c., vs. Richard Hayward

cient to prevent his recovery, and the Court agreeing with him gave judgment of foreclosure. The propriety of this decision is now presented to this Court. The statute for the foreclosure of mortgages by the Courts of Common Law, under which this proceeding was had, has created no little embarrassment in the decision of cases based upon it.

It may answer where there is merely a mortgage between mortgagor and mortgagee, or between the assignee of a mortgage, having a transfer of the entire debt, and the mortgagor. We incline to the opinion that it will not answer where there is an assignment by the mortgagor against his assignee, because the statute gives judgment for the amount of the principal and interest with costs, &c.

In many cases beyond this there may be difficulty, owing to the peculiar character of the instrument—its complexity and the various conflicting interests to be settled, adjusted and arranged. Mortgages are the creatures almost entirely of the Courts of Equity, in opposition to the sterner rules of the Common law, asserting an absolute transfer of the title on the failure by the mortgagor to pay the debt. The Courts of Equity moderated this rigor and harshness and in a degree obtained their almost entire regulation and control by framing rules and principles adjusted to their nature and character.

In imposing upon the common law Courts the duty hitherto discharged in equity, it was clearly not the design to revive common law rules and principles in reference to this subject—this would be to destroy them. So far from it, equitable rights are maintained by requiring the person holding the equity of redemption, whether he be mortgagor or any one else to be served with notice, and by the permission to him to file objections, and contest the foreclosure.— Still the Legislature provide but imperfect means of executing their purpose, and give few directions as to the mode of action. We are then left to the rules in equity, or we have none to direct us. These we are constrained to adopt, approved as they are by the experience of ages and founded on the highest wisdom and propriety. So far then as the statute furnishes proper directions, we look to it as the guide, but beyond this the rules of Courts of equity applicable to this subject must govern. We find a difficulty of this kind in the case before us. There has been already a foreclosure and sale of the property mortgaged to pay a portion of the debt embraced in the mortgage. The same tribunal is asked for a second order for sale of

the same property to pay another portion of the same debt against the same defendant, whilst in all probability an application will be made by the holder of the last note for a third judgment and a third sale of the same property.    There being then separate interests, there will be necessarily three claimants of property under three judicial sales.    Suits and conflicts between the owners of the various judgments if they purchased, and if others purchased between innocent parties, will ensue, and no one will know what he is buying and each one will dread a controversy as to the title.    Such a state of things, so well calculated to do injustice and injury and impair confidence in the action of the Courts is to be avoided, if possible.    It could not occur in a Court of Equity under the mode of proceeding prevailing there.    Thus in the case of Palmer vs. the Earl of Carlisle, on an application by the owner of *one sixth part* of the money due on a mortgage, by bill to foreclosure a *sixth part* of the mortgage estate, the Vice Chancellor held "there can be no foreclosure or redemption unless the parties entitled to the mortgage money are before the Court."    Palmer vs. Earl of Carlisle, 1 Simons and Stu., 423.  1 Brown, Ch. 368.    Story's Eq. Pl. 201.  1 Daniel's Prac. 260, and this we consider as the settled rule of that Court.

Finley vs. Bank of U. S. was an application by a mortgagee to set aside a sale had under a decree at the instance of a party holding a subsequent mortgage.    The Court say "It cannot be doubted that Coleman ought regularly to have been a party defendant, and that had the existence of his mortgage been known to the Court, no decree ought to have been pronounced in the case, until he was introduced into it."    We do not think the decree erroneous because the prior mortgagee was not made a defendant, that fact not having appeared to the Court until the decree was completely executed.— 11 Wheaton, 304—6 Cond., 321.

The first section of the law of mortgages itself contemplates the plaintiff to be owner of the entire interest, in saying that the "assignees, &c., may take the same remedies which any mortgagee can take for the foreclosure of any mortgage, and *for the recovery of the money secured thereby.*"

The necessity of all parties in interest being before the Court is apparent, for reasons manifest in this very case.    Justice cannot, in our opinion, be done without it.    If new parties are to be made, the proceeding at law is unsuitable, there being no provision adequate to the object.    The true and only remedy is in a Court of

David C. Wilson, Administrator of James Lunn, &c., *vs.* Richard Hayward.

Equity—which accommodates itself to every variety of interest— where the purchaser under the previous sale, who is now a party directly in interest, and which may yet be maintained as far as equity demands, the plaintiff under the first foreclosure and the holder of the last note may all be made parties. The conflicting rights and interests being adjusted and determined, the property may then be sold, with a fair prospect of finding a purchaser, and of the rightful holders of the mortgaged security getting paid to the extent of their interest.

In considering the present case, we have been struck with the difficulty of giving a valid judgment against the present defendant, owing to his position in the matter. By the first judgment, if entered as prescribed by the statute, he was forever barred and foreclosed, and all persons under him, from all right and equity of redemption of or in the said mortgaged property, and every part thereof, the purchaser getting his right, as well as that of the plaintiff in execution, and being substituted to the place of both. If right in this view, the defendant had no further interest, but the proper course was to go against the purchaser, as the proper party to the petition, according to the terms of the statute itself. The prayer is, " that the mortgagor, and all persons claiming, or to claim, by, through, or under him be foreclosed ;" and by the 4th section, " personal service of notice, &c., shall be served upon the mortgagor, or *other person* having the equity of redemption." Duval, p. 40.

It has been insisted that this plaintiff has, through the assignment of the mortgage, the superior legal right. But the party having the prior judgment of foreclosure has, by intendment of law, an assignment also, for without it he could not properly have obtained judgment. The counsel for defendant has contested the position, that a parol assignment will carry the interest in the mortgage.— It is sufficient in the present case to decide, without considering this point, that the party claiming a judgment of foreclosure at law should be the owner of all the notes which the mortgage was given to secure, and without it is not entitled to judgment.

The judgment of the Court below will, therefore, be reversed and set aside, and the cause remanded, with instructions to dismiss the petition, without prejudice to the right of the party to file a bill in Chancery, as herein directed, so as to protect the interests of the various parties under the mortgage and the decree of foreclosure already had, as far as possible.