HENRY A. TARVER *et al.,* plaintiffs in error, *vs.* WILLIAM H. ELLISON, defendant in error.

(BLECKLEY, Judge, having been of counsel in this case, did not preside.)

1. The sale of land by virtue of execution issued on a judgment junior to a mortgage, not foreclosed, conveys to the purchaser only the property sold,

Tarver *et al. vs.* Ellison.

which, in this state, the equity of redemption, or its equivalent, which is the estate in the land subject to the mortgage debt, and such sale divests the lien of a judgment older than the mortgage, only upon that interest or estate in the land which is sold.

2. If there be not money enough raised from the sale of this equity of redemption, or interest in the land subject to the mortgage, to pay off the judgment which is older than the mortgage, an execution issued upon such older judgment may be levied upon the residue of the estate in the land, and being older than the mortgage, it will sell the land free from its incumbrance, and the title of the purchaser will be good against the mortgage.

Levy and sale. Mortgage. Liens. Before Judge WRIGHT. Calhoun Superior Court.   March Term, 1876.

Reported in the opinion.

VASON & DAVIS ; R. F. LYON ; R. N. ELY, for plaintiffs in error.

C. B. WOOTEN; LANIER & ANDERSON ; J. L. BROWN ; B. B. BOWER, for defendant.

JACKSON, Judge.

Ellison foreclosed a mortgage on certain lands in Calhoun county, and levied the mortgage *fi. fa.* upon them ; a claim was interposed by Tarver, and Colquitt was made a party claimant also, Tarver having bought the land for him.   The facts were submitted to the presiding judge without the intervention of a jury, for his decision, subject to be reviewed here. The court below held that the land was subject to the mortgage *fi. fa.*, the claimant excepted, and the question is, was it subject under the facts agreed upon.

Those facts, in substance, are as follows : Before the foreclosure of the mortgage the land was levied on by the United States marshal on a *fi. fa.* from the United States court, issued upon a judgment younger than the mortgage, and Tarver bought for Colquitt.   Afterwards, an older *fi. fa.* issued from an older judgment than the mortgage, from the state courts, was levied upon the same land, and Colquitt bought, so that

Colquitt's title rest upon two purchases, one on a sale by virtue of a judgment younger than the mortgage, and the other by virtue of a sale on a judgment older than the mortgage.

1. It is clear that the first purchase will not protect his title from the mortgage, because the mortgage having been recorded, he bought with notice and it is older than the judgment which sold the land. The question then is narrowed to this, will his last purchase protect his title from the mortgage? Undoubtedly it will protect him, inasmuch as the judgment under which the land was then sold is older, and its lien superior to the mortgage, unless that lien was extinguished as to the entire estate in the land by the first sale. Was the lien extinguished by that first sale to the whole estate? Unquestionably it was extinguished to the extent that the land was sold. The rule is that the older judgment creditor must look to the fund arising from the sale, and not to the land—his lien is transferred from the land to the fund, and if there be enough money to pay him and he neglects to go and get it applied by rule to his *fi. fa.*, no matter what estate in the land is sold, his lien being taken off the land and put on the fund, is gone, because his *laches* alone prevented him from getting his money.

2. But if, as in this case, the fund is not enough to pay him, and the fund does not represent the whole land, the entire estate in it, but it is sold subject to a mortgage, and thus represents only the value of the land, less the mortgage debt, it is clear that the reason of the rule, that his lien is transferred to the fund and taken off the land, has ceased; because only a part of the land is in the fund, whereas his judgment lien, being older than the mortgage debt, covered all the land that was represented by the mortgage estate, as well as that represented by what the law calls the equity of redemption. In other words, that which was sold at the first sale for $775 00 was what Colquitt bought by Tarver, which was all the estate except the part left in the mortgagor for the mortgagee to pay his debt, and that which Colquitt bought at the last sale, for $1,000 00, was the residue of the estate left in the mortgagor

Tarver *et al. vs.* Ellison.

to pay the mortgagee, and as the lien of the judgment, older than the mortgagee, was never extinguished as to that estate, there being no fund in court raised by the first sale to represent that upon which the lien of the older judgment could attach, it seems plain that the title to the whole land, free from the mortgagee, is in the claimant.

Suppose that this mortgage had been foreclosed, and the whole estate in these lands had been sold at the first sale, and the fund had been in court for distribution, it is clear that the older judgment would take the whole fund over the mortgage *fi. fa.*, because there was not enough at both sales to pay it off. Absolutely nothing would have been then left for the mortgagee. Is it the law that by failing to foreclose he can get more of the land than by foreclosure? We think not. In either case his rights are superior to the junior judgment, and inferior to the senior judgment. If land be sold under a judgment junior to his lien, the purchaser buys subject to it; if land be sold under a judgment olden than his lien, the purchaser buy free from it. The older judgment creditor, after he has applied the fund in court, raised by the sale of the estate, less the mortgage, has the right to sell the residue of the estate left in the mortgagor, and a purchaser of such residue, if he be also the purchaser of the part sold at the first sale, takes, we think, complete title.

It cannot be doubted that the naked sale of property unincumbered by special liens, such as mortgages, sold under junior judgment liens, divests senior judgment liens. It was so held in 9 *Georgia Reports*, 164, because it had been the Georgia practice in our circuit courts, Judge NISBET, in delivering the opinion, saying, however, that it could not stand upon principle, but the courts followed the practice on the circuits. In 10 *Georgia Reports*, 148, it was reaffirmed, but it rests on the idea that the lien attaches to the money which is in place of the property, and in lieu of all of it, and supposes all to be sold. But in the case at bar *all* was not sold, but only a part, to-wit: the land, less "the value of the mortgage lien, or the equity of redemption." This court has de-

cided that in such cases, only part of the estate, to-wit: the equity of redemption, is sold. In 7 *Georgia Reports*, 187, Judge WARNER says : " The general rule in this state undoubtedly is that when mortgaged property is levied on by execution, issuing upon a general judgment against the mortgagor, and sold subject to the incumbrance of the mortgage, that the purchaser gets *only* the mortgagor's equity of redemption," etc. In 20 *Georgia Reports*, 728, Judge LUMPKIN rather ridicules the idea that in Georgia no such thing as the equity of redemption exists and can be sold ; and goes on to say : " Harwell & Callaway have mortgage liens on the negroes of Lee ; common law judgments are obtained against Lee, of a junior date ; the property is levied on and sold. How ? Subject, of course, to the senior mortgage incumbrance ; and denominate the interest or thing sold, the equity of redemption, or by any other name, the legal effects and results are precisely the same." Afterwards, he adds : " In this case the negroes being sold subject to the mortgages, we are bound to presume that the price at which they were knocked off, was their value only over and above the sum for which they were mortgaged." So in the case at bar, we are bound to presume that what this land, at the first sale, brought, was only its value over and above the mortgage, and only that was sold, and the residue remained in the mortgagor to be sold again, either by the mortgage when foreclosed or a lien to which the mortgage was inferior. So in 11 *Georgia Reports*, 637, it was ruled that if an older judgment lets a junior judgment take money raised from the sale of defendant's property, it is extinguished *only pro tanto*, as to third persons ; as much as to say it is not extinguished, if there be any other property on which it can go, and it would not have been paid off entirely had it got the money. So, also, the Code, section 3659, provides. So Judge McDONALD, in 25 *Georgia Reports*, 329, expressly rules that one who buys subject to a mortgage, buys only the equity of redemption.

We hold on authority therefore, as well as principle, that the first purchaser here bought the equity of redemption, which

was part only of this estate; that there remained another estate in this land which was subject to the mortgage and to liens older than the mortgage; that this last estate was sold under the older lien, superior to the mortgage; that the claimant holds both titles, and that the land is his.   It is true that in England, and wherever the common law remains unaffected by statute, the mortgagee takes title to the land subject to the right of the mortgagor to redeem, and this right to redeem, to buy it back, is the equity of redemption, and as, in this state, no title passes to the mortgagee, there is no need to redeem, to buy back, what never passes out of the mortgagor, the mortgage being only a security for debt in the shape of a lien upon the property, and therefore, technically, there may be no such thing as the equity of redemption.   But practically and equitably, so far as principle applied to the facts at bar is concerned, it is the same thing.   The mortgagor holds the whole estate, the entire interest in the land, but carved, as it were, into two parts in respect to the rights of judgment creditors; as to junior judgments to the mortgage, an estate less the mortgage, and as to senior judgments, an estate embracing the value of the mortgage.   Only a part analogous to the equity of redemption was first sold by the junior *fi. fa.*, and Tarver bought that; and as to that part the senior judgment lost its lien; it left the land and attached to the money which that part of the estate in the land brought; but as to that estate or interest in the land which was never sold, there was no money representing it on which the lien could be transferred; therefore it remained a lien on the land, and by virtue of that lien this judgment, older than the mortgage, sold the interest of the mortgagee in the land, and Colquitt bought it, and the title is in him free from the incumbrance of the mortgage. Mark, there was not money enough raised from the first sale, which may be called the equity of redemption, to pay off the older judgment, if all had been applied to it.   If there had been money enough to pay it off it would have been extinguished, whether actually applied to it or not.   The question is a new one, but we think we have applied the correct legal

and equitable principles to its solution, and that all the Georgia authorities are reconcilable to their application.

Judgment reversed.